# 24-418

## In The United States Court of Appeals
## For the Second Circuit

TRADE LINKS, LLC,

*PLAINTIFF-APPELLEE,*

v.

BI-QEM SA DE CV AND
BI-QEM, INC.,

*DEFENDANTS-APPELLANTS.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF CONNECTICUT

## BRIEF IN OPPOSITION BY PLAINTIFF-APPELLEE

Patrick J. McHugh
Patrick McHugh Law LLC
303 South Broadway, Suite 234
Tarrytown, NY 10591
Tel: (203) 403-2217
patrick@pmchughlaw.com

Keith A. Minoff
Law Offices of Keith A. Minoff, P.C.
One Roundhouse Plaza, Suite 304
Northampton, MA 01060
Tel: (413) 301-0866
keith@minofflaw.com

*Attorneys for Plaintiff-Appellee*

## **RULE 26.1 CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1, Appellee-Plaintiff Trade Links, LLC submits the following statement:

1.      Appellee-Plaintiff is a limited liability company organized under the laws of the State of Connecticut with its principal place of business locate in Westport Connecticut;

2.      The sole member and 100% owner of Trade Links, LLC is Eliot Essagof, an individual located in Westport, Connecticut.; and

3.      No publicly held corporation owns ten percent (10%) or more of Appellee-Plaintiff Trade Links, LLC, whether by stock, membership interest or other form of ownership.

## TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES…………………………………………….…….. iii

INTRODUCTION IN OPPOSITION………………………………………... 1

I. BI-QEM'S DEFICIENCIES IN THE BRIEF IN SUPPORT OF APPEAL……….. 2

II. TRADE LINKS' REMEDIATION OF BI-QEM'S BRIEFING
DEFICIENCIES…………….......................................................... 5

   A. JURISDICTIONAL STATEMENT:
   DISTRICT COURT JURISDICTION…………...…………………….. 5

   B. JURISDICTIONAL STATEMENT:
   APPELLATE COURT JURISDICTION…………………………….… 8

   C. THE FILING DATES ESTABLISH THAT BI-QEM'S APPEAL IS
   *UNTIMELY* EXCEPT AS TO BI-QEM'S CHALLENGE THAT THE
   SRA DOES NOT PROVIDE FEES AND COSTS TO BE AWARDED
   TO THE PREVAILING PARTY
   (TRADE LINK)…………….......................................................... 11

   D. THE FINAL ORDERS AND JUDGMENTS OF THE DISTRICT
   COURT……………………………………………………….…...... 11

   E. BI-QEM'S FAILURE TO PROVIDE A STATEMENT
   OF THE ISSUES PRESENTED FOR REVIEW………………………….. 12

   F. TRADE LINKS' RESPONSE TO BI-QEM'S
   STATEMENT OF THE CASE…………………………………..……. 12

      1. NATURE OF THE CASE……………………………………. 13

      2. RELEVANT PROCEDURAL HISTORY……………………….. 14

   G. BI-QEM'S FAILURE TO PROVIDE A SUMMARY OF THE
   ARGUMENT AS REQUIRED BY FRAP 7………………………….. 17

III. TRADE LINKS' ARGUMENTS ON THE MERITS IN OPPOSITION
TO BI-QEM'S APPEAL……………………………………..…………..    17

    A. STANDARD OF REVIEW……………………..…………………...    18

    B. SUMMARY OF ARGUMENT IN OPPOSITION…………………………    18

        1. THE DISTRICT COURT PROPERLY EXERCISED ITS BROAD
DISCRETION IN DENYING BI-QEM'S MOTION TO
STRIKE THE TESTIMONY OF TRADE LINKS' DAMAGES
EXPERT……………………………………………………………    20

        2. TRADE LINKS WAS NOT REQUIRED TO GIVE
NOTICE OF BREACH AND OPPORTUNITY TO
CURE UNDER THE SRA………………………………………    33

        3. PARAGRAPH 7(B) OF THE SRA EXPRESSLY REQUIRES
BI-QEM TO COMPENSATE TRADE LINKS FOR ANY
DAMAGES RESULTING FROM ITS BREACH OF THAT
CONTRACT INCLUDING ATTORNEYS' FEES AND
COSTS………...........................................................................    37

CONCLUSION……………………………………………………………..........    46

## TABLE OF AUTHORITIES

PAGE

**Cases**

*Amoco Oil Co. v. Liberty Auto & Elec. Co.*,
262 Conn. 142 (2002) ...................................................................39, 40

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
303 F.3d 256 (2d Cir. 2002) .......................................................21, 22, 23

*Campbell v. Metro. Prop. & Cas. Ins. Co.*,
239 F.3d 179 (2d Cir. 2001) ...................................................................21

*Chan Young Bak v. Metro-N. R.R. Co.*,
650 F. App'x 63 (2d Cir. 2016)...................................................................4

*Chiesi USA, Inc. v. Sandoz Inc.*,
2015 WL 13932698 (D.N.J. Mar. 31, 2015) ...........................................27

*City of New York v. Mickalis Pawn Shop, LLC*,
645 F.3d 114 (2d Cir. 2011) .....................................................................8

*Colon de Mejias v. Lamont*,
963 F.3d 196 (2d Cir. 2020) ...................................................................18

*Conn. Nat'l Bank v. Rehab Associates*,
300 Conn. 314 (2011) .............................................................................41

*Coppola Construction Co., Inc. v. Hoffman Enterprises L.P.*,
157 Conn. App. 139 (2015)................................................................36, 37

*Cordy v. Sherwin-Williams Co.*,
156 F.R.D. 575 (D.N.J. 1994) ................................................................28

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993)...................................................................................9

*Edwards v. CBD & Sons*,
2018 WL 2303017 (D. Conn. May 21, 2018) ......................................................38

*Frank v. United States,*
78 F.3d 815 (2d Cir. 1996) ..................................................................................10

*Gen. Elec. Co. v. **Joiner***,
522 U.S. 136 (1997)..............................................................................18, 21, 23

*Grant Thornton, LLP. v. F.D.I.C.*,
297 F. Supp.2d 880 (S.D.W. Va. 2004) ...............................................................28

*Helming & Co., P.C. v. RTR Techs., Inc.*,
76 F. Supp.3d 363 (D. Mass. 2015) .................................................................39, 40

*Hewlett-Packard Co. v. EMC Corp*.,
330 F. Supp. 2d 1087 (N.D. Cal. 2004) ...............................................................28

*Heyman Assocs. No. 5, L.P. v. FelCor TRS Guarantor, L.P.*,
153 Conn. App. 387 (2014)................................................................ 38, 40-42, 44

*Hughes v. Bricklayers & Allied Craftworkers Local # 45,*
386 F.3d 101 (2d Cir.2004) ..................................................................................10

*In re Agent Orange Prod. Liab. Litig.*,
517 F.3d 76 (2d Cir. 2008) ..................................................................................10

In *Weiss v. Smulders*,
313 Conn. 227 (2014) ..........................................................................................36

*Kalk v. Middaugh*,
118 F. App'x 559 (2d Cir. 2004)...........................................................................10

*Kimball v. Vill. of Painted Post*,
737 F. App'x 564 (2d Cir. 2018).......................................................................... 11

*Koch Ref. Co. v. Jennifer L. Boudreau M/V*,
85 F.3d 1178 (5th Cir. 1996) ...............................................................................28

*Kumho Tire Co. v. Carmichael,*

526 U.S. 137 (1999) .............................................................18, 21, 23

*Local Union No. 38, Sheet Metal Workers' Int'l Ass'n v. Pelella*,
    350 F.3d 73 (2d Cir. 2003) .................................................32

*Lore v. City of Syracuse*,
    670 F.3d 127 (2d Cir. 2012) ...............................................11

*Merrill v. Hyman*,
    2024 WL 191807 (2d Cir. Jan. 18, 2024)............................18

*Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*,
    418 F.3d 168 (2d Cir. 2005) ...............................................43

*Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*,
    875 F.3d 107 (2d Cir. 2017) ...............................................10

*Norton v. Sam's Club*,
    145 F.3d 114 (2d Cir. 1998) ...............................................10

*Novartis AG*,
    2011 WL 691594 (D.N.J. Jan. 24, 2011) ...........................28

*O'Neal v. Spota*,
    744 F. App'x 35 (2018).........................................................4

*Palmer v. Ozbek*,
    144 F.R.D. 66 (D. Md.1992) ...............................................28

*Rand-Whitney Containerboard Ltd. P'ship v. Town of Montville*,
    290 F. App'x 430 (2d Cir. 2008) ........................................39

*Roden v. AmerisourceBergen Corp.*,
    186 Cal. App. 4th 620 (2010)..............................................44

*SCS Communs., Inc. v. Herrick Co.*,
    360 F.3d 329 (2d Cir. 2004) ...............................................31

*Shaheed v. Kroski*,
    833 F. App'x 868 (2d Cir. 2020) ..........................................5

*Taylor v. Harbour Pointe Homeowners Ass'n*,
690 F.3d 44 (2d Cir. 2012) ............................................................. 4-5, 15

*Total Recycling Servs. of Ct. v. Conn. Oil Recycling Servs, LLC*,
308 Conn. 312 (2013) ..................................................................... 38, 41

*United States v. DiDomenico*,
985 F.2d 1159 (2d Cir.1993) .................................................................. 27

*United States v. Locascio*,
6 F.3d 924 (2d Cir. 1993) ....................................................................... 27

*United States v. Rivera*,
971 F.2d 876 (2d Cir. 1992) ................................................................... 27

*United States v. Salamanca*,
244 F. Supp.2d 1023 (D.S.D. 2003) ...................................................... 28

*Wi-Lan USA, Inc. v. Apple Inc.*,
2014 WL 12160742 (S.D. Cal. Aug. 28, 2014) ..................................... 28

*Wright v. Wilburn*,
194 F.R.D. 54 (N.D.N.Y. 2000) ............................................................. 32

**Statutes and Rules**

Conn. Gen. Stat. § 929 ............................................................................. 7

D. Conn. L. Civ. R. (7) ............................................................................. 8

Fed. R. App. P. 28 ......................................................................... 1, *passim*

FRAP Local Rule 28.1 ................................................................ 12, *passim*

Fed. R. Civ. P. 12(b)(2) ......................................................................... 6-7

Fed. R. Civ. P. 15(a)(1) ................................................................6

Fed. R. Evid. 702 .......................................................................22

## Treatises

41 Am. Jur. 2d Indemnity § 1 .....................................................38

Federal Judicial Center, Reference Manual

    on Scientific Evidence 11 (2d ed. 2000) ...............................22

<u>INTRODUCTION IN OPPOSITION</u>

Plaintiff-Appellee Trade Links, LLC ("Trade Links") submits the following Opposition to Appellants' Brief in Support dated June 20, 2024. APPELLATE DKT. NO. 25. Trade Links, by necessity, must first address the significant procedural irregularities in Appellants' submission in order to oppose properly Appellants' Brief In Support, all as detailed in the requirements of Federal Rule of Appellate Procedure ("FRAP") 28.

In such regard:

(i) BI-QEM's deficiencies, including supporting case law that speak directly to how BI-QEM's procedural deficiencies alone may require dismissal of the entire appeal, are set forth below in **SECTION I**;

(ii) Trade Links' remediation of BI-QEM's procedural deficiencies (including the requisite statements as to the foundational requirements for appellate subject matter jurisdiction) are set forth below in **SECTION II**; and

(iii) Trade Links' arguments on the merits in opposition to BI-QEM's appeal are set forth below in **SECTION III**.

## I.    BI-QEM'S DEFICIENCIES IN THE BRIEF IN SUPPORT OF APPEAL

Defendants-Appellants BI-QEM SA de CV and BI-QEM, Inc. ("BI-QEM")[1]

open their brief in support of this appeal with a "Statement of the Case."  *See*

APPELLATE DKT. NO. 25 at page 1.

The Federal Rules of Appellate Procedure require that the Appellant's brief

"must contain, under appropriate headings and in the order indicated:

> . . .

> **(4)** a jurisdictional statement, including:

>> **(A)**    the basis for the district court's or agency's subject-matter jurisdiction, with citations to applicable statutory provisions and stating relevant facts establishing jurisdiction;

>> **(B)**    the basis for the court of appeals' jurisdiction, with citations to applicable statutory provisions and stating relevant facts establishing jurisdiction;

>> **(C)**    the filing dates establishing the timeliness of the appeal or petition for review; and

>> **(D)**    an assertion that the appeal is from a final order or judgment that disposes of all parties' claims, or information establishing the court of appeals' jurisdiction on some other basis;

> **(5)** a statement of the issues presented for review; and

> . . .

---

[1] Defined as footnoted in Appellants Brief in Support.  *See* APPELLATE DKT. NO. 25 at p. 1, n.1.

> **(7)** a summary of the argument, which must contain a succinct, clear, and accurate statement of the arguments made in the body of the brief, and which must not merely repeat the argument headings;

Fᴇᴅ. R. Aᴘᴘ. P. 28.

BI-QEM's Brief in Support of Appeal opens *initially* in proper order with: (i) a Rule 26 Disclosure Statement (FRAP 28(a)(1) compliance); (ii) a table of contents (FRAP 28(a)(2) compliance); and (iii) a table of authorities (FRAP 28(a)(3) compliance) but thereafter fails to include any of the following requirements:

(i)    Jurisdictional statement, to include the basis for *district court jurisdiction* with legal and factual support (FRAP 28(a)(4)(A));

(ii)    Jurisdictional statement, to include the basis for *appellate court jurisdiction* with legal and factual support (FRAP 28(a)(4)(B));

(iii)    Filing dates *establishing the timeliness of the appeal* or petition for review (FRAP 28(a)(4)(C));

(iv)    An assertion that the appeal is from *a final order or judgment that disposes of all parties' claims, or information establishing the court of appeals' jurisdiction on some other basis* (FRAP 28(a)(4)(D));

(v)    A statement of the issues presented for review; (FRAP 28(a)(5)) and

(vi)    *A summary of the argument, which must contain a succinct, clear, and accurate statement of the arguments made in the body of the brief*, and which must not merely repeat the

3

argument headings.
(FRAP 28(a)(7)).

FED. R. APP. P. 28(a)(4)-(5), (7) (emphasis supplied).

Instead, after setting forth a table of authorities (FRAP 28(a)(3)), BI-QEM

launches directly into their statement of the case (FRAP 28(a)(6)) – because that is

where BI-QEM *wants* to go – rather than going to where BI-QEM is first *required*

to go, conspicuously ignoring the four-part requirement to articulate the basis for

subject matter jurisdiction as detailed in FRAP 28(a)(1)-(4).

Precedent in this Circuit deems BI-QEM's briefing technique unacceptable.

See *Chan Young Bak v. Metro-N. R.R. Co.,* 650 F. App'x 63, 65 (2d Cir. 2016) ("We

remind Bak's counsel that 'failure to comply with Rule 28 invites dismissal of the

appeal.'") (quoting *Taylor v. Harbour Pointe Homeowners Ass'n*, 690 F.3d 44, 48

(2d Cir. 2012)). As set forth by summary order in *O'Neal v. Spota*, 744 F. App'x 35

(2018):

> [A]ppellants must comply with Federal Rule of Appellate
> Procedure 28(a), which requires an appellant's brief to contain,
> "under appropriate headings and in the order indicated":
>
> (4) *a jurisdictional statement* ... ; (5) a statement of the
> issues presented for review; (6) a concise statement of
> the case setting out the facts relevant to the issues
> submitted for review ... ; (7) a summary of the argument
> ... ; (8) the argument ... ; [and] (9) a short conclusion
> stating the precise relief sought....

4

*Id.* at 36 (citing FED. R. APP. P. 28(a)) (emphasis supplied). See also *Shaheed v. Kroski,* 833 F. App'x 868, 870 (2d Cir. 2020) ("Plaintiffs' brief is deficient in several respects, most glaringly in its failure to comply with Federal Rule of Appellate Procedure 28's requirement that the brief specify which of the district court's many rulings plaintiffs challenge.") (summary order); *Taylor v. Harbour Pointe Homeowners Ass'n*, 690 F.3d 44, 48 (2d Cir. 2012) ("Taylor's brief utterly fails to comply with Rule 28 and Local Rule 28.1. *The brief contains no jurisdictional statement and nowhere indicates the applicable standards of review*.") (emphasis supplied).

Adherence to these requirements is mandatory and of particular importance in this appeal by reason of Trade Links' motion to dismiss the appeal for lack of appellate jurisdiction. *See* APPELLATE DKT. NOS. 21, 23.

## II. TRADE LINKS' REMEDIATION OF BI-QEM'S BRIEFING DEFICIENCIES

Trade Links sets forth the following to remedy BI-QEM's failure to address the seven required deficiencies which violate FRAP 28(b), as set forth *supra* in SECTION I:

### A. JURISDICTIONAL STATEMENT: DISTRICT COURT JURISDICTION

Trade Links commenced this civil action in the United States District Court for the District of Connecticut against BI-QEM on March 3, 2019, *see* DISTRICT DKT. NO. 1, thereafter filing a timely First Amended Verified Complaint as of right

under FED. R. CIV. P. 15(A)(1), *see* DISTRICT DKT. NO. 6;  Trade Links filed an

eight-count Second Amended Verified Complaint on May 15, 2021  (the operative

verified complaint) to bring Trade Links' pleadings in line with the District Court's

Memorandum of Decision on BI-QEM's motion to dismiss.  *See* DISTRICT DKT.

NOS. 103, 125.  Subject matter jurisdiction is based on diversity of citizenship as to

both appealing defendants, *see* DISTRICT DKT. NO. 125 at ¶ 12.

Proof of Service upon the registered agent for service for BI-QEM, INC. was

returned to Court on April 5, 2019.  *See* DISTRICT DKT. NO. 9.  Proof of Service

upon BI-QEM Sa de CV, a corporation organized under the laws of Mexico with a

principal place of business in Villigran, Mexico occurred by personal service upon

Claudio Colombo, Chairman of the Board of BI-QEM Mexico SA de CV while

visiting the Florence, Massachusetts plant of BI-QEM, Inc. (of which Mr. Colombo

holds the title of President).  Colombo DEP. TR. at 96.  Proof of service was

returned on May 29, 2019.  *See* DISTRICT DKT. NO. 26.

BI-QEM, Inc. moved to dismiss the complaint, including for lack of

personal jurisdiction under FED. R. CIV. P. 12(b)(2) prior to service of process on

BI-QEM Mexico SA de CV.  *See* DISTRICT DKT. NO. 14.  BI-QEM Mexico SA de

CV, following proper personal service of process upon one of its officers or

directors, joined BI-QEM, Inc.'s challenge to personal jurisdiction in the District

Court by filing a separate motion to dismiss challenging lack of personal

6

jurisdiction.  *See* DISTRICT DKT. NO. 56.  The FED. RULE CIV. P. 12(b)(2) motion of the Mexican entity tracked the same arguments as raised by BI-QEM, Inc.  *Id.*

By Memorandum of Decision ("Mem.") the District Court considered and rejected both FED. R. CIV. P. 12(b)(2) challenges.  *See* DISTRICT DKT. NO. 103 at 7 ("Both BI-QEM entities move to dismiss the Amended Complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.").  The District Court held that it had specific (as opposed to general) personal jurisdiction over both BI-QEM entities pursuant to Connecticut's long-arm statute, stating "that a foreign corporation is subject to suit in Connecticut 'on any cause of action arising . . . [o]ut of any contract . . . to be performed in this state.'"  Mem. at 8 (*quoting* CONN. GEN. STAT. 929(f)(1)) (case citations omitted).  At issue in this appeal is a Sales Representative Agreement ("SRA"), a copy of which is annexed as EXHIBIT A to Trade Links' pleadings.  The District Court noted, "all of Trade Links claims . . . arise out of the SRA,"  Mem. at 8, n.4.  Following a detailed analysis the District Court held:  "*This is not a close call. The SRA contemplated that performance would occur in Connecticut.*"  *Id.* at 9 (emphasis supplied).  The District Court then concluded it had personal jurisdiction after performing the second part of the required analysis and finding that exercise of personal jurisdiction over both BI-QEM defendants was consistent with and did

not offend due process.  Mem. at 13-16 (setting forth supporting case law within the court's detailed analysis).

Neither BI-QEM entity sought reconsideration as provided by Local Rule, *see*, D. CONN. L. CIV. R. 7(c), or raised lack of District Court jurisdiction on this appeal.  See *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 139 (2d Cir. 2011) ("Although an appearing defendant may, if it disagrees with the district court's threshold ruling on personal jurisdiction, seek reversal of that ruling on appeal, the defendant must properly preserve its defense for appellate review.").

The District Court, therefore, had jurisdiction, both as to subject matter based on diversity of citizenship and specific personal jurisdiction as to both BI-QEM defendants in the case.

### B.    JURISDICTIONAL STATEMENT: <br> APPELLATE COURT JURISDICTION

Astonishingly, the BI-QEM Appellants provide no statement setting forth the basis for this Court's jurisdiction over the issues upon which BI-QEM seeks appellate relief.  The jurisdictional statement with respect to appellate court jurisdiction is, nonetheless, simple and straightforward:  *for the reasons set forth in Trade Links' Motion to Dismiss, see* APPELLATE DKT. NOS. 21 and 23, *this Court lacks subject matter jurisdiction due to BI-QEM's untimely filing a Notice of Appeal*, except with regard to the District Court's order entered on January 18,

2024 (*see* District Dkt. No. 339 and Appellate Docket No. 4), awarding Trade Links $775,844.29 in attorneys' fees and costs.

Because, however, BI-QEM appeals *only* the District Court's *ability* to make an award under the SRA contract, *see* Appellants Brief in Support at 31-34, BI-QEM has waived the right to appeal the *amount* of attorneys' fees and costs awarded by the District Court.

BI-QEM's original Notice of Appeal enumerated four "rulings and orders entered by" the District Court: (i) Judgment entered following the jury's verdict; (ii) denial of BI-QEM's Rule 50(b) for judgment as a matter of law; (iii) denial of BI-QEM's motion for attorneys' fees and costs and the grant of Trade Links' motion for fees and costs; and (iv) the order entered January 18, 2024 awarding Plaintiff fees and costs *in the sum certain* of $775,844.29. *See* District Dkt. No. 335.

BI-QEM's Appellant Brief in Support, however, addresses only three issues - *not* those four catalogued in BI-QEM's Notice of Appeal: (i) Trade Links' forensic expert should have been precluded from testifying under *Daubert* principles, see *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); (ii) Trade Links' failed to provide a thirty-day notice to cure that BI-QEM purports to be a requirement under the SRA; and (iii) the SRA does not entitle Trade Links to seek an award of costs and attorneys' fees.

9

The *amount* of attorneys' fees and costs awarded is no longer part of BI-QEM's appeal as it is not referenced or challenged in BI-QEM's Appellant Brief in Support. BI-QEM challenges only Trade Links' *entitlement* to attorneys' fees and costs under the SRA, an issue which the district court decided in its March 27, 2023 Order granting Trade Links' Rule 54 motion for attorney's fees and costs. *See* DISTRICT DKT. NO. 309. By not addressing or challenging the *amount of attorneys' fees and costs*, BI-QEM has abandoned that issue for purposes of this appeal. See *Kalk v. Middaugh*, 118 F. App'x 559, 560 (2d Cir. 2004) (summary order) ("As an initial matter, Kalk has not, in her appellate brief, pursued many of the claims contained in her complaint. Accordingly, we deem them abandoned." ) (citing *Hughes v. Bricklayers & Allied Craftworkers Local # 45*, 386 F.3d 101, 104 n.1 (2d Cir.2004)); *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal.") (citing *Frank v. United States,* 78 F.3d 815, 832–33 (2d Cir.1996), *vacated on other grounds,* 521 U.S. 1114, 117 (1997)); *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 122 (2d Cir. 2017) ("Garage has failed to challenge those aspects of the district court's judgment in its briefs on appeal, and therefore has abandoned such claims."); *In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 87 (2d Cir. 2008) ("Because the plaintiffs' briefs make no arguments regarding the district court's findings as to their failure-to-warn or

10

manufacturing defect claims, we deem these claims to have been abandoned.");

*Kimball v. Vill. of Painted Post*, 737 F. App'x 564, 573 (2d Cir. 2018) ( "Although, in her Complaint, Kimball pleaded claims under the NYSHRL against all Defendants, she does not discuss her claims against Defendants other than Yost in her briefs on appeal. She therefore has abandoned her NYSHRL claims against other Defendants.") (citing *Lore v. City of Syracuse*, 670 F.3d 127, 149 (2d Cir. 2012)).

### C. THE FILING DATES ESTABLISH THAT BI-QEM'S APPEAL IS *UNTIMELY* EXCEPT AS TO BI-QEM'S CHALLENGE THAT THE SRA DOES NOT PROVIDE FEES AND COSTS TO BE AWARDED TO THE PREVAILING PARTY (TRADE LINKS)

BI-QEM filed only one Notice of Appeal, dated February 16, 2024, *see* DISTRICT DKT. NO. 339.

Since BI-QEM did not brief on this appeal the *amount* of fees and costs awarded by the District Court, *see* DISTRICT DKT. NO. 335, the issue of the amount of fees and costs awarded by the District Court has been waived and is thereby non-appealable. *See, supra,* case authorities addressing waiver by reason of failing to brief issues in a manner sufficient for appellate Review.

### D. THE FINAL ORDERS AND JUDGMENTS OF THE DISTRICT COURT

The final judgments and orders of the District Court relevant for this appeal are as follows:

    1. Entry of judgment based on jury verdict.

11

DISTRICT DKT. NO. 261;

2. Entry of order of the District Court granting motion for stay of execution "*pending the disposition of Defendants' anticipated motion for judgment as a matter of law. Absent further order of the Court, the stay shall automatically be lifted 30 days following the Court's decision.*"
DISTRICT DKT. NO. 273 (emphasis in italics supplied);

3. Entry of order of the District Court denying Defendants' Rule 50(b) motion for judgment as a matter of law, "for the reasons stated on the record."
DISTRICT DKT. NO. 305;

4. Entry of order of the District Court, granting Plaintiff's Rule 54 motion for costs and attorneys' fees in accordance with the SRA.
DISTRICT DKT. NO. 309; and

5. Memorandum of Decision entered January 18, 2024, awarding Trade Links attorneys' fees and costs in the sum of $775,844.29.
DISTRICT DKT. NO. 335.

### E. BI-QEM'S FAILURE TO PROVIDE A STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

For the reasons set forth, *supra*, as articulated in the cited case law of this Circuit, BI-QEM's failure to include a statement of the issues BI-QEM presents for appeal should not be countenanced by the Court.

### F. TRADE LINKS' RESPONSE TO BI-QEM'S STATEMENT OF THE CASE

BI-QEM's Statement of the Case follows the format set forth in Local Rule 28.1(b), to which Trade Links' responds in accordance with FRAP 28(b)(3) to the

extent Trade Links is "dissatisfied." *Id.* Of note is Local Rule 28.1(a)'s mandate that "[a] brief must be concise, logically arranged with proper headings, and free of irrelevant matter. The court may disregard a brief that does not comply with this rule." *Id.*

Local Rule 28(b)(1) requires that the Statement of the Case begin with a description of "the nature of the case and the relevant *procedural* history." Instead, BI-QEM chose to divide Appellants' 28(b)(1) "nature of the case" into (i) an "Overview;" and (b) "Relevant Facts." *See* Appellants' Brief in Support of Appeal at pp. 1-2 and 3-6.

### 1. NATURE OF THE CASE

BI-QEM's "Overview" simply restates BI-QEM's *Daubert* argument set forth in **POINT I** of the brief's argument section but without required citations to supporting authority. The concluding sentences of what BI-QEM labels "Overview" amply demonstrate that BI-QEM has utterly failed to provide this Court what is required as stated with clarity in LOCAL RULE 28(b)(1) ("the nature of the case"): "The Trial Court's rationale for her [District Court Judge Kari A. Dooley] ignoring <u>Daubert</u> was her fear that, if the testimony were stricken, Trade Links' case 'is all but lost.' This is simply not a relevant consideration under <u>Daubert</u>." Appellants Brief in Support at p. 2.

13

Trade Links respectfully submits that the Trial Court's description of the nature of the case as stated to the jury prior to opening arguments is far more appropriate and responsive to the Local Rule requirement:

> [T]his matter arises out of a civil dispute between Plaintiff -- Trade Links, LLC -- and Defendants -- BI-QEM SA de CV and BI-QEM Inc. The Plaintiff and the Defendants had a business relationship for many years. The Defendants produced plastic molding compounds, which are used in the manufacture of a variety of products, and Plaintiff was the exclusive sales representative for those compounds in the United States, Puerto Rico and Canada.  At some point, the business relationship began to deteriorate, and it eventually came to an acrimonious end.  The Plaintiff brings a number of claims against the Defendants, but the core dispute is the claim that the Defendants breached contractual obligations to the Plaintiff in a variety of ways, causing the Plaintiff significant financial damage. The Defendants deny all of the Plaintiff's allegations or any claim that they caused any cognizable harm to the Plaintiff, and further claim that the Plaintiff itself breached the contract between the parties.

TRIAL TR. 41:4-23.

## 2. RELEVANT PROCEDURAL HISTORY

Rather than provide a relevant procedural history, BI-QEM includes more argument under the heading "Relevant Facts":  (i) Trade Links "terminated the SRA without giving notice of breach and thirty days to cure," an argument that belongs in **POINT II** of the moving brief's argument section on the issue, *see* Appellant Brief in Support at p. 3; (ii)  a scattered attack on Trade Links' verified complaint, *see* Appellant Brief in Support at p. 4 which survived both a motion to dismiss (*See* DISTRICT DKT. NO. 103 - District Court Memorandum of Decision)

and a motion for summary judgment (*See* DISTRICT DKT. NO. 103 - District Court Memorandum of Decision); and (iii) a continuation of the *Daubert* argument referenced, *supra*, in BI-QEM's "Overview," *see* Appellant Brief in Support at p. 5-7.

BI-QEM's gratuitous commentary, which is both speculative and unprofessional ("Apparently feeling sorry for Trade Links, the Trial Court did not strike Mr. Marcus' [expert] testimony"), further illustrates Appellants' complete abdication of its obligation to provide this Court with a compliant brief, "*concise and logically arranged with proper headings, and free of irrelevant matter*." FRAP, LOCAL RULE 28.1(A) (emphasis supplied). Trade Links respectfully submits that BI-QEM's failure to abide by this Court's procedural rules is so flagrant that the Court should seriously consider disregarding the brief in its entirety. As this Court has stated, "[t]he Court may disregard a brief that does not comply with this rule." FRAP Local Rule 28.1(a); see *Taylor v. Harbour Pointe Homeowners Ass'n*, 690 F.3d 44, 48 (2d Cir. 2012).

The relevant procedural history is easily catalogued:

(i)    Commencement of the underlying civil action by Verified Complaint and thereafter amended, *see* DISTRICT DKT. NOS. 1, 6 AND 125;

(ii)   BI-QEM's responsive pleading filed at the direction of the District Court following a repeat motion to dismiss deemed unacceptable by the District Court, *see* DISTRICT DKT. NOS. 143, 145, 155 and 159;

(iii)  Entry of judgment based on jury verdict, *see* DISTRICT DKT. NO. 261;

(iv)   Denial of BI-QEM'S Rule 50(b) motion for judgment as a matter of law "for the reasons stated on the record," *see* DISTRICT DKT. NO. 305, entered February 27, 2023, thereby establishing March 29, 2023 as the deadline for filing a timely Notice of Appeal with respect to both the entry of judgment on the jury verdict against BI-QEM, Inc. and BI-QEM Mexico SA de CV for breach of the SRA and breach of the covenant of good faith and fair dealing (*i.e.*, bad faith breach of contract) and the denial of BI-QEM's Rule 50(b) motion for judgment as a matter of law;

(v)    Granting of Trade Links' Rule 54 Motion for Attorney's Fees and Costs, *see* DISTRICT DKT. NO. 309;

(vi)   Entry by Memorandum of Decision of the District Court awarding Trade Links attorneys' fees and costs in the aggregate sum $775,844.29, *see* DISTRICT DKT. NO. 335.

### G. BI-QEM'S FAILURE TO PROVIDE A SUMMARY OF THE ARGUMENT AS REQUIRED BY FRAP 7

As with BI-QEM's failure to provide a statement of the issues presented for review, *supra*, **SECTION II.E**, BI-QEM's failure to provide a summary of the argument should, in like manner, not be countenanced by this Court. FRAP 28(7) clearly states that "a summary of the argument . . . *must* contain a succinct, clear, and accurate statement of the arguments made in the body of the brief, and which must not merely repeat the argument headings." *Id.* (emphasis supplied).

### III. TRADE LINKS' ARGUMENTS ON THE MERITS IN OPPOSITION TO BI-QEM'S APPEAL

BI-QEM presents three arguments in support of the relief Appellants seek on this appeal: (i) the District Court's purported "abandonment" of an alleged *Daubert* gatekeeping function by not excluding the testimony of Trade Links' forensic expert on damages; (ii) Trade Links' failure to issue a "30-day Notice to Cure;" and (iii) the SRA's lacking of any provision entitling Trade Links an award of attorneys' fees and costs, a challenge raised at least twice previously and resoundingly rejected each time by the District Court in well-reasoned opinions, *see* DISTRICT DKT. NOS. 195 AND 309. *See also* Appellants' Brief in Support at pp. 32-34.

17

### A. STANDARD OF REVIEW

This Court reviews the District Court's decision to permit the testimony of David Marcus, Trade Links' damages expert, BI-QEM's first argument raised in this appeal, for an abuse of discretion. See *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999); *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141–42 (1997) (holding that "abuse of discretion is the proper standard of review of a district court's evidentiary rulings" and that *Daubert* did not alter this general standard).

BI-QEM's second and third arguments raised in this appeal involve interpretation of the SRA contract. This Court reviews questions of contact interpretation *de novo*. See *Colon de Mejias v. Lamont*, 963 F.3d 196, 202 (2d Cir. 2020); see *Merrill v. Hyman*, 2024 WL 191807, at *1 (2d Cir. Jan. 18, 2024).

### B. SUMMARY OF ARGUMENT IN OPPOSITION

As to the first two issues, this Court lacks subject matter jurisdiction by reason of BI-QEM's failure to file a timely appeal; the reasons for said lack of subject matter jurisdiction are meticulously detailed in Trade Links' separately filed Motion to Dismiss. *See* APPELLATE DKT. NOS. 21, 23. While subject matter jurisdiction cannot be waived or in any manner conceded to exist when it does not, Trade Links emphasizes to this Court in the strongest of terms that Trade Links' addressing the substance of BI-QEM's first two of three arguments briefed for appeal should not in any way be considered a manifestation of a "fall back" or

18

"lack of confidence" position regarding the absence of appellate jurisdiction; Trade Links remains firmly resolute in its separately filed Motion to Dismiss and expressly urges this Court to dispose of BI-QEM's first two issues *jurisdictionally* – meaning disposition by reason of the clear absence of appellate subject matter jurisdiction – rendering Trade Links' arguments in opposing those arguments on the merits unnecessary.

As to BI-QEM's third issued brief for appeal, the express terms of the SRA explicitly establish Trade Links' right to an award of its attorneys' fees and costs, including those fees and costs incurred by reason of having to defend this appeal.[2] As to this third and final issue, Trade Links submits that this Court should consider *declining* consideration of the relief sought by BI-QEM given its purposeful decision to ignore the procedural rules and requirements ensconced in FRAP 28 and Local Rule 28.1 of this Court, particularly with respect to its failure  to address the four-part directive as to appellate jurisdiction when a motion to dismiss on that precise issue remains pending before this Court.

---

[2] Trade Links respectfully defers to this Court's determination as to the amount of such additional award.

### 1. THE DISTRICT COURT PROPERLY EXERCISED ITS BROAD DISCRETION IN DENYING BI-QEM'S MOTION TO STRIKE THE TESTIMONY OF TRADE LINKS' DAMAGES EXPERT

BI-QEM's first argument raised on the appeal invites this Court to condone a misapplication of *Daubert* with respect to Trade Links' damages expert, David Marcus. *See* Appellants' Brief In Support at pp. 8-25. The record reflects that the District Court carefully considered BI-QEM's motion to strike the testimony of Mr. Marcus and thereafter denied the motion only after (i) a robust and exchange with all counsel of record, accompanied by an opportunity for all counsel to be heard once a credibility issue first arose during the course of a vigorous cross-examination of the expert, (ii) revisiting with counsel all options at the close of cross-examination, again affording all counsel of record the opportunity to be heard again on the issue; and (iii) revisiting the issue yet again with counsel within the context of the jury-charging conference. The District Court fashioned a strongly worded curative charge, detailed in content and delivered with serious candor to the jury prior to deliberations.

Thereafter, the District Court heard oral argument once more on the issue following a briefing schedule in conjunction with BI-QEM's renewed Rule 50(b) motion for entry of judgment as a matter of law. After an engaged exchange with counsel during oral argument at a scheduled motion hearing on February 27, 2023, as entered on the record, *see* DISTRICT DKT. NO. 305 at p. 1 (cataloguing a total

time of 3 hours 36 minutes), the District Court denied BI-QEM's renewed Rule 50(b) motion for judgment after careful consideration.  *See* DISTRICT DKT. NO. 312 (February 27, 2023 transcript of proceedings).

Citations to the record, exchanges among counsel with the District Court and relevant briefing follow, *infra*.  First, a review of how a District Court conducts a proper *Daubert* analysis and, more particularly, how precedent of this Court instructs a proper application of *Daubert* in conjunction with FED. R. EVID. 702 to include, as it should, a proper degree of deference to the District Court which has a perspective at the trial court level *during trial* that an appellate court, necessarily siting *in absentia* and reviewing after the fact, should respect.

As the Supreme Court explained in *Kumho Tire*, supra, "Our opinion in *Joiner* makes clear that a court of appeals is to apply an abuse-of-discretion standard when it 'review[s] a trial court's decision to admit or exclude expert testimony.' " 526 U.S. at 152 (quoting *Joiner*, 522 U.S. at 138–39); see, e.g., *Campbell v. Metro. Prop. & Cas. Ins. Co.*, 239 F.3d 179, 185 (2d Cir. 2001) (same).  "[I]n analyzing the admissibility of expert evidence, the district court has broad discretion in determining what method is appropriate for evaluating reliability under the circumstances of each case."  *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 264 (2d Cir. 2002).

Rule 702 of the FEDERAL RULES OF EVIDENCE, which governs the admissibility of expert and other scientific or technical expert testimony, provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702. "The Supreme Court has made clear that the district court has a 'gatekeeping' function under Rule 702—it is charged with 'the task of ensuring that an expert's testimony *both rests on a reliable foundation and is relevant to the task at hand.*" *Amorgianos*, 303 F.3d at 265; accord *Campbell*, 239 F.3d at 184 (emphasis supplied); *see* FEDERAL JUDICIAL CENTER, REFERENCE MANUAL ON SCIENTIFIC EVIDENCE 11 (2d ed. 2000).

In *Amorgianos*, this Court provided further guidance as to how a Daubert analysis under Rule 702 should be conducted, demonstrating, notwithstanding BI-QEM's *Daubert* protests, that BI-QEM's myopic focus is fatally misplaced:

> Although Rule 702 sets forth specific criteria for the district court's consideration, the *Daubert* inquiry is fluid and will necessarily vary from case to case. The Supreme Court has identified a number of factors bearing on reliability that district courts may consider, such as (1) whether a theory or technique "can be (and has been) tested," *Daubert*, 509 U.S. at 593; (2) "whether the theory or technique has been subjected to peer review and publication," *id*.; (3) a technique's "known or potential rate of error," and "the existence and

22

maintenance of standards controlling the technique's operation," *id.* at 594; and (4) whether a particular technique or theory has gained "general acceptance" in the relevant scientific community, *id.* See also *Fed. Deposit Ins. Corp. v. Suna Assocs., Inc.*, 80 F.3d 681, 687 (2d Cir.1996) (discussing *Daubert* factors)

*Amorgianos* 303 F.3d 256 at 266.

With the above guidance, it is of equal importance that (i) Rule 702's inquiry must be *flexible*; and (ii) "the gatekeeping inquiry *must be tied to the facts of a particular case*," *Kumho Tire Co.*, 526 U.S. at 150. Once the District Court has satisfied itself the evidence is *sufficiently reliable* so as to be admissible, it is "bound to consider the evidence in the light most favorable to plaintiff" when deciding either motions for summary judgment or, as here, Rule 50 motions for judgment as a matter of law. *See In re Joint E. & S. Dist. Asbestos Litig.,* 52 F.3d 1124, 1135 (2d Cir.1995).

The decisive admission in this case supporting the District Court's considered approach in denying BI-QEM's motion to strike the testimony of Mr. Marcus came from the trial testimony of BI-QEM's own forensic expert witness, Mr. Douglas Sosnowski, CPA, who testified in rebuttal to the Marcus expert report. Mr. Sosnowski testified as follows to the three components in running a lost profits analysis:

> A:  . . . . So the three elements, if you
> need to calculate any type of present value calculation, are
> the income that you're looking at, the risk rate, and the
> time. Those are the three elements.

23

Q. Well, with regard to income, Mr. Marcus did testify,
and in his report, that he did an analysis of income and it
was discounted, right?

A. Correct.

Q. Do you have any problems with how he discounted the
income?

A. No.

Q. Okay. With regard to risk factors, do you have any
problems with Mr. Marcus's consideration of risk factors?

A. No.

Q. What about the discount rate of 9. -- between 9 and
10 percent? Do you have any issue with that?

A. No. I thought it was accurate within a relevant
range.

Q. Okay. And you just have a problem with time?

A. Which, right, wasn't defined.

TRIAL. TR. at pp. 1134:14 – 1135:8.  By "time" Mr. Sosnowski meant "age,"

more particularly the age of Mr. Essagof, the sole member and owner of

Trade Links:

Q. Do you recall testifying as to what the appropriate
age is for Mr. Essagof to retire, or somebody in Mr.
Essagof's position?

A. Yes.

Q. And what was it?

24

A.  It's 65 years old.

Q.  65. Do you know, as Mr. Essagof sits here today, he's 65 and four months old? Do you know that?

A.Yes.

TRIAL. TR. at p. 1135:14-22.  BI-QEM's own damages expert in rebuttal testified that he agreed with Mr. Marcus' forensic accounting approach in all respects, including how income was discounted to present value and all applied risk factors – except that Mr. Marcus did not opine that lost profits should extend only until age 65 and end . . .  even though Mr. Essagof was older than 65 at the time Mr. Sosnowski rendered his testimony and was still actively employed in the workforce.  *Id.*

All of BI-QEM's arguments invoking *Daubert* as a basis upon which the District Court should have either stricken the Marcus testimony in its entirety or reversed the jury's award post-verdict collapse under the weight of BI-QEM's own expert's admission that the Marcus approach was sound, fully in accord with well-known accounting methodology (*i.e.,* lost profit analysis), and commonly accepted in the industry of forensic accounting.  *Id.*

BI-QEM's entire argument based upon *Daubert* fails on the merits as a consequence; it simply cannot support the relief BI-QEM seeks on this appeal.  Separately, BI-QEM's *Daubert* argument fails by reason of BI-

25

QEM's failure to file a timely appeal, leaving this Court without subject matter jurisdiction even to consider it for those reasons detailed in Trade Links' separately filed Motion to Dismiss. *See* APPELLATE DKT. NOS. 21, 23.

Independent of BI-QEM's *Daubert* challenge raised by way of this appeal, as addressed *supra*, the District Court carefully weighed all arguments separately raised by counsel for BI-QEM in seeking to strike the Marcus expert testimony in its entirety by reason of issues concerning witness credibility. The direct examination of Mr. Marcus commenced but did not conclude on Day 7 of trial (May 31, 2022, *see* DISTRICT DKT. NO. 287). Following *voir dire* by defense counsel, the District Court found Mr. Marcus qualified to testify as an expert to provide expert testimony on damages. TRIAL TR. at p. 913:24. Prior to continuing the direct testimony of Mr. Marcus the following day (Day 8 of trial, June 1, 2022, *see* DISTRICT DKT. NO. 288), the District Court heard from defense counsel regarding concerns of witness credibility arising from the deposition of Mr. Marcus which took place on August 18, 2020. *See* TRIAL TR. at pp. 958:21-967:9. The direct and cross examinations of Mr. Marcus concluded later that day. Before adjourning for the day, the Court advised counsel that motions and argument would be held the following morning regarding Mr. Marcus. *See* TRIAL. TR. at p. 1155:18-25. The following morning (Day 9 of Trial, June 2,

2022, *see* DISTRICT DKT. NO. 289) the Court heard additional argument from counsel regard the testimony of Mr. Marcus, *See* TRIAL TR. at pp. 1170:6-1188:4, and thereafter during the Jury Charging Conference. *See* DISTRICT DKT. NO. 290.

"[T]he district court has broad discretion regarding the admission of expert testimony, and this Court will sustain the admission unless 'manifestly erroneous.'" *United States v. Locascio*, 6 F.3d 924, 936 (2d Cir. 1993); see *United States v. DiDomenico*, 985 F.2d 1159, 1163 (2d Cir.1993) (same)*; United States v. Rivera*, 971 F.2d 876, 887 (2d Cir. 1992) (same). Such deference to the trial court is particularly appropriate regarding the decision to admit or exclude expert testimony at trial. As aptly stated by the Second Circuit in *DiDomenico*:

> Particularly in close cases, like this one, the decision should be left to the trial judge who has his finger on the pulse of the trial and has lived with the jury throughout the case. He has a much better vantage point than an appellate court to decide whether expert testimony will assist the jury or, in the parlance of the gridiron, will just be piling on.

985 F.2d 1159 at 1163.

In seeking to strike expert testimony, Defendants bear the burden, and that burden is appropriately high. "The party seeking to disqualify an expert bears the burden of proof on these issues." *Chiesi USA, Inc. v. Sandoz Inc*., 2015 WL 13932698, at *5 (D.N.J. Mar. 31, 2015). See *Novartis AG*, 2011 WL 691594 at *1

27

(D.N.J. Jan. 24, 2011); *Cordy v. Sherwin-Williams Co*., 156 F.R.D. 575, 580

(D.N.J. 1994); *Koch Ref. Co. v. Jennifer L. Boudreau M/V*, 85 F.3d 1178, 1181 (5th

Cir. 1996) ("The party seeking disqualification bears the burden of proving these

elements."). "A party moving for disqualification bears a 'high standard of proof'

to show that disqualification is warranted. *Grant Thornton, LLP. v. F.D.I.C.*, 297 F.

Supp. 2d 880, 882 (S.D.W. Va. 2004) (citing *Tessier v. Plastic Surgery Specialists,

Inc*., 731 F. Supp. 724, 729 (E.D.Va.1990)).

Additionally, the case law recognizes expert disqualification as a drastic

remedy. *Palmer v. Ozbek*, 144 F.R.D. 66, 67 (D. Md.1992) ("[D]isqualification is a

drastic measure that courts should impose only hesitantly, reluctantly and rarely.");

*United States v. Salamanca*, 244 F. Supp.2d 1023, 1025 (D.S.D. 2003)

("Nevertheless, disqualification is a drastic measure which courts should hesitate to

impose except when absolutely necessary."); see *Hewlett-Packard Co. v. EMC

Corp*., 330 F. Supp. 2d 1087, 1092 (N.D. Cal. 2004). "Courts are generally

reluctant to disqualify expert witnesses, especially those ... who possess useful

specialized knowledge." *Grant Thornton, LLP*., 297 F. Supp.2d at 882 (quoting

*Palmer*, *supra*, 144 F.R.D at 67). "There is no bright-line rule for disqualification.

Courts should consider whether disqualification of the expert would be 'fair to the

affected party and would promote the integrity of the legal process.'" *Wi-Lan

USA, Inc. v. Apple Inc.*, 2014 WL 12160742, at *1 (S.D. Cal. Aug. 28, 2014).

The Court heard argument on the issue the day after it was first raised by BI-QEM, stating as follows:

> **THE COURT**: I have seen charges where the jury is advised that the witness has given both expert and fact testimony and that the fact testimony does not get any enhanced credibility assessment simply because the person also happens to be an expert. I'm not sure that I've ever given that charge, but I have seen it.

TRIAL TR. at 1187:15-20. Defense counsel agreed ("That's the nature of what we would be asking, Your Honor."). *See* TRIAL TR. at 1187:15-20. The Court considered all relevant aspects prior to deciding the issue, balancing the competing interests, and concluded:

> **THE COURT**: As I was about to say, I think striking Mr. Marcus's testimony would be within my discretion under the circumstances presented here. Mr. Marcus failed to disclose a business relationship with the Plaintiff that dates back to the Federal tax audit of Mr. Essagof's 2013 and 2014 tax returns, specifically as it relates to the books and records of Trade Links and the recording of income in those years.
>
> He failed to disclose that the business relationship, extended over several years, resulted in payments of over $50,000 for services rendered, and only in 2017 -- or 2018, I'm not sure precisely when -- did he refer Plaintiff to a corporate accountant.
>
> At his deposition, Mr. Marcus disclosed generally how he came to meet Mr. Essagof, and that he had prepared tax returns for Mr. Essagof for several years and had been paid approximately two to three thousand dollars for that work.

It also came to light during his testimony that he had a role in the creation of the books and records, at least for 2014, on which he relied when both preparing tax returns as well as his expert opinion.

And although I accept Plaintiff's counsel's representation that they were unaware of these prior engagements or Mr. Marcus's role in creating some of the records on which he relied in formulating his opinion, Mr. Essagof was certainly aware of the relationship he had with Mr. Marcus, which dated back to at least 2016. So Plaintiff, too, bears responsibility for this nondisclosure.

That said, the Defendants were able to vigorously cross-examine Mr. Marcus on these issues and related issues, which impact Mr. Marcus's credibility, which the jury will, no doubt, consider when deciding whether to accept Mr. Marcus's testimony, and that could include both fact testimony and expert testimony. And there is little doubt of the extraordinary prejudice to the Plaintiff if I exclude this testimony -- Plaintiff's case is all but lost.

As a less drastic means of addressing these issues, I intend to instruct the jury as follows -- and I will indicate that Attorney Banker will give you a copy of this instruction, and we can talk about it if either side wants me to adjust it, during the charging conference.

The instruction reads as follows: *You have heard testimony that Plaintiff's expert, Mr. Marcus, although asked, failed to disclose at his deposition that he had performed work for the Plaintiff and the Plaintiff's principal, Mr. Essagof, in relation to an audit of Plaintiff's 2013 -- I should probably make that Mr. Essagof's 2013 -- and 2014 tax returns, and had performed additional work for Plaintiff in subsequent years, as well.*

*His deposition testimony was, as a factual matter, not accurate. In light of this, you may, though are not*

> *required, to view Mr. Marcus's testimony with great caution in assessing what, if any, weight it should be given.*
>
> *You have also heard testimony that Mr. Marcus was involved, as a factual matter, in the preparation of the records on which he relied when formulating his opinion regarding lost profits. To the extent that he was both a fact witness and a witness offering expert opinions, I instruct you that his testimony as to facts about which he was personally aware should not be given any greater weight simply because he was also identified as an expert in forensic accounting.*

TRIAL TR. at 1311:04 –1313:15. (emphasis supplied).

During the jury charging conference, the Court inquired as to any objections to the proposed curative charge. Defense counsel did not object; in fact, defense counsel expressly endorsed it as an appropriate charge ("And we think the instruction appropriately addresses the prejudice that the Plaintiff suffered -- or rather, the Defendant suffered as a result of the violations, and we think that the language is appropriate."). *See* TRIAL TR. at 1407:11-14. Under these circumstances, BI-QEM waived any objection to the charge. *AMW Materials Testing, Inc. v. Town of Babylon*, at *17 (E.D.N.Y. Mar. 13, 2008) ("Moreover, the Plaintiffs failed to object to the curative charge at the time or immediately thereafter. As a result, the Plaintiffs waived any such objection."). See also *SCS Communs., Inc. v. Herrick Co*., 360 F.3d 329, 343 (2d Cir. 2004) ("UNDER FED. R. CIV. P. 51, '[a] party who fails to object to a jury instruction at trial waives the right to make that instruction the basis for an appeal'") (internal

31

citations omitted); *Local Union No. 38, Sheet Metal Workers' Int'l Ass'n v. Pelella*, 350 F.3d 73, 87 (2d Cir. 2003) ("A party that 'fails to object to a jury instruction at trial waives the right to make that instruction the basis for an appeal' ") (internal citations omitted); *Wright v. Wilburn*, 194 F.R.D. 54, 58 (N.D.N.Y. 2000) ("failure to object to a jury instruction or the form of an interrogatory prior to the jury retiring results in a waiver of that objection").

BI-QEM's argument based upon alleged ethical violations by Mr. Marcus of the American Institute of Certified Public Accountants (AICPA) Code of Professional Conduct, s*ee* Appellants Brief in Support at p. 18, is disposed of easily. BI-QEM's counsel, in the words of the District Court, "were able to vigorously cross-examine Mr. Marcus," *supra*, including with respect to the Code's provisions as applied to accountants rendering expert services for "*attest*" clients. TRIAL TR. beginning at 993:16 *et seq*. On re-direct, Mr. Marcus was clear that the services he performed in this case, as well as with respect to his prior engagement, were "*nonattest*." *See* TRIAL TR. at 1073:7-8 and 1070:12, respectively. The sections of the AICPA Code cited by BI-QEM relate only to "attest" clients and are, therefore, inapplicable.

In the end, counsel for BI-QEM "reviewed and approved" all exhibits in evidence, including five spreadsheets annexed to the expert report of Mr. Marcus which he used in testifying about income statements, volumes of product sold,

calculations (methodology) and discounted case flow.  *See* District Dkt. No. 256, Plaintiff's Exhibits 183 to 187 referenced therein as in evidence.[3]

For the reasons set forth, *supra*, BI-QEM's first argument raised on appeal fails both jurisdictionally and on the merits.

## 2. Trade Links Was Not Required To Give Notice Of Breach And Opportunity To Cure Under The SRA

Trade Links was not required under the SRA to provide any notice or opportunity to cure because its notice of termination was based on § 11(b)(i) which does not include any such requirement.  Trade Links' notice of termination, *see* District Dkt. No, Defendants' Exhibit 512 in evidence, states in relevant part as follows: "The bases for termination pursuant to §11(b) include, but are not limited to, BI-QEM's bad faith, continuing failure to act in a reasonable and ethical manner in connection with BI-QEM's obligations under the SRA . . . ."  This language is taken *verbatim* from § 11(b)(1) of the SRA which permits either party to terminate the Agreement on these grounds and does not mention, much less require, giving any prior notice to the other party.  BI-QEM relies instead on § 11(b)(iv) of the SRA which permits either party to terminate "[i]f the Defaulting Party does not cure its failure to perform any of its obligations hereunder, after

---

[3] For the record and reserving all rights, Trade Links disputes BI-QEM's many gratuitous, personal characterizations peppered throughout Appellants Brief in Support.  Since they do not speak to the merits of the appeal, Trade Links considers it neither necessary nor professionally appropriate to respond further.

thirty (30) days' notice and opportunity to cure." Section 11(b)(iv) of the SRA is a separate and distinct basis for termination from 11(b)(i) which omits any mention of a notice requirement. The reference in 11(b)(iv) to the Defaulting Party's "failure to perform any of its obligations *hereunder*"[4] unambiguously means any breach of its obligations under the terms of the SRA as a whole and does not, either explicitly or implicitly, relate back to § 11(b)(i) or otherwise impose any prior notice requirement for a termination based on bad faith. This is consistent with § 11(a)(iii) of the SRA which states that the Agreement shall terminate immediately upon written notice by Supplier to Representative if:

> (iii)   Representative breaches any of its representations and warranties under this Agreement, provided, however, Representative shall have forty-five(45) days from said written notice to cure said breach (*except for bad faith or willful misconduct)*, failing which this Agreement shall automatically terminate.

*Id.* (emphasis supplied).

Thus, § 11(a)(iii), like § 11(b)(i), dispenses with any requirement that the other party be provided prior notice and an opportunity to cure where the termination is based on the party's bad faith.[5] This makes perfect sense as bad

---

[4] "Defaulting Party" is defined in § 7(b) as "[a]ny party breaching its obligations under the Agreement."

[5] Evidence presented at trial demonstrated that BI-QEM was well aware of Trade Links' claims that BI-QEM breached the SRA months before the March 14, 2019 termination letter. There was testimony from Mr. Colombo that BI-QEM did, in fact,

faith conduct (as found by the jury as against both BI-QEM entities in issuing its verdict of bad faith breach of the SRA), unlike, for example, a breach based on simple failure to pay commissions, is not inherently curable. BI-QEM argues that the jury's verdict that they breached the SRA and the covenant of good faith and fair dealing should be overturned because Trade Links failed to provide notice of breach and an opportunity to cure before terminating the contract on March 14, 2019. In addition, BI-QEM ignores the fact that, as the jury found, by the time of the termination, BI-QEM had already materially breached the SRA in bad baith, thereby relieving Trade Links of any further obligations under the contract, including any obligation to provide notice to cure prior to termination. See *Shah v. Cover-It, Inc.* 86 Conn. App. 71 (2004).

Separately, whether or not Trade Links' notice of termination complied with the SRA has no bearing on any issue or claim raised by this appeal. BI-QEM never

---

receive a letter from Mr. Essagof dated January 16, 2019, stating it was a "notice of demand for payments due and all other obligations of BI-QEM under provisions of the SRA, inclusive, but not limited to the provisions quoted in this letter." Mr. Colombo admitted on cross-examination that he "must have received the letter" at the time because he was copied on it. *See* TRIAL TR. at 1333. Also, in July 2018, Trade Links provided both defendants with written notice in their Demand for Arbitration*, see* DISTRICT DKT. NO. 256, Plaintiff's 6 in evidence, which was served upon BI-QEM's counsel, that BI-QEM breached the SRA by seeking to marginalize Mr. Essagof from having direct contacts with his customers in frustration of his rights under §§ 2 and 3(f), by "not timely paying him commissions under the Agreement," and by their "anticipated refusal to pay commissions for 2019," as threatened in BI-QEM's May 31, 2018 Notice of Termination.

filed any counterclaims against Trade Links for breaching the SRA by reason of improper termination, or for any other reason. The jury ultimately found that both BI-QEM entities breached the SRA, and did so in bad faith. *See* DISTRICT DKT. NO. 259 (jury verdict form as entered in the record). In focusing on Trade Links' termination of the SRA, BI-QEM attempts to divert attention from what the jury determined – both  BI-QEM entities breached the SRA to which both were bound and did so in bad faith. *Id.*

The cases cited by BI-QEM are inapposite. See Appellants' Brief in Support at 29. In *Weiss v. Smulders*, 313 Conn. 227 (2014), the defendant food business filed counterclaims alleging that the plaintiff had failed to pay for goods purchased. The plaintiff asserted that defendant's material breaches of the distribution agreement constituted a defense to the counterclaims, but the court held that the plaintiff had waived this defense by failing to notify the defendant of the breaches and providing it with an opportunity to cure, as provided in the agreement. There are no facts in *Weiss* even suggesting that the defendant there either repudiated the contract or engaged in a bad faith course of conduct designed to force the plaintiff to relinquish his rights, as the jury found in this case. In *Coppola Construction Co., Inc. v. Hoffman Enterprises L.P.,* 157 Conn. App. 139 (2015), a construction case, the plaintiff general contractor alleged that the defendant owner terminated the contract without providing the required notice, thereby depriving the contractor

of an opportunity to perform. The court found that the contractor had not abandoned its duty to perform under the contract and that it was prevented from completing performance because of the owner's decision to end the contractor's involvement before completion of the project. In *Coppola*, the alleged failure to provide notice prior to termination was the very basis of the contractor's breach of contract claim. By contrast, here, the alleged failure to provide notice is not the basis of any claim or counterclaim and has no bearing whatsoever on BI-QEM's liability for breach of the SRA and the implied covenant of good faith and fair dealing, as discussed *supra*.

Accordingly, for the reasons set forth, *supra*, BI-QEM's second argument raised on appeal similarly fails both jurisdictionally and on the merits.

### 3. PARAGRAPH 7(B) OF THE SRA EXPRESSLY REQUIRES BI-QEM TO COMPENSATE TRADE LINKS FOR ANY DAMAGES RESULTING FROM ITS BREACH OF THAT CONTRACT INCLUDING ATTORNEYS' FEES AND COSTS

Section 7(b) of SRA states as follows:

> (b) Indemnification Against Breach of Agreement. Any party breaching its obligations under this Agreement (a "Defaulting Party") shall indemnify and hold the other party harmless against all claims, losses, damages, costs, and expenses (including reasonable attorneys' fees) of any nature or kind arising directly or indirectly from such breach.

*See* SRA, ¶ 7(b).

Recovery of attorneys' fees, under what is generally referred to as the "American" rule, requires a basis anchored in either contract or statute. Under Connecticut law, an exception to the "American" rule regarding an award of attorneys' fees is the existence of a statutory or contractual provision allowing for such an award. *Total Recycling Servs. of Ct. v. Conn. Oil Recycling Servs, LLC*, 308 Conn. 312, 326–27 (2013). Here, the SRA expressly provides that the party breaching its obligations shall indemnify the other party for all damages and expenses, including reasonable attorneys' fees. The term "indemnity" is not limited to reimbursement for a claim brought by a third party and clearly requires BI-QEM to compensate Trade Links for any losses or damages it suffers as a consequence of BI-QEM's breach of the agreement:

> It should be noted that the term "indemnity" encompasses any duty to pay for another's loss or damage and is not limited to reimbursement of a third- party claim. Indeed, although indemnity generally relates to third party claims, this general rule does not apply if the parties to a contract use the term "indemnity" to include direct liability as well as third party liability.

41 AM. JUR. 2D INDEMNITY § 1. See *Edwards v. CBD & Sons*, 2018 WL 2303017 at *14 (D. Conn. May 21, 2018) ("To be sure, 'the term 'indemnity' ... is not limited to reimbursement of a third party claim,' and parties may contract to 'use the term 'indemnity' to include direct liability as well as third party liability.'"); *Heyman Assocs. No. 5, L.P. v. FelCor TRS Guarantor, L.P.*, 153 Conn. App. 387, 415 (2014) (indemnity and hold harmless agreements "often provide that one of the

38

parties will protect the other from litigation costs or claims brought by third persons as well as from claims between themselves")).

Defendants rely on this Court's opinion in *Rand-Whitney Containerboard Ltd. P'ship v. Town of Montville*, 290 F. App'x 430 (2d Cir. 2008), for the proposition that section 7(b) is an indemnification provision that applies only to third-party claims. In *Rand-Whitney*, this Court held by summary order that the contractual indemnification provision at issue there unambiguously did not apply to first-party actions. *See* 290 F. App'x at 433. Relying on the Connecticut Supreme Court's opinion *in Amoco Oil Co. v. Liberty Auto & Elec. Co.*, 262 Conn. 142, 144 (2002), the *Rand-Whitney* court stated that "under Connecticut law, the words 'indemnification and hold . . . harmless'—which are used in this contract— are *typically* interpreted to apply to third-party claims." *Rand-Whitney*, 290 F. App'x at 433 (emphasis supplied). However, the *Rand-Whitney* decision "merely states that under Connecticut law, phrases such as 'indemnification' and 'hold harmless' are '*typically* interpreted to apply to third-party claims.'" *Helming & Co., P.C. v. RTR Techs., Inc.*, 76 F. Supp.3d 363, 370 (D. Mass. 2015) (quoting *Rand-Whitney*, 290 F. App'x at 433)).

In *Amoco Oil*, the Connecticut Supreme Court stated that "[t]he logic and rationale underlying our indemnity case law are based on the premise that *an action for indemnification* is one in which one party seeks reimbursement from

39

another party for losses incurred in connection with the first party's liability to a third party." 262 Conn. at 148 (emphasis added). However, *Amoco Oil* is factually inapposite to the circumstances at issue here,[6] and as subsequently discussed by the Appellate Court of Connecticut, does not address "whether contractual language . . . that utilizes the phrase 'indemnify and hold . . . harmless,' is limited to *an action for indemnification*, or whether that language may support a claim between the contracting parties." *Heyman*, 153 Conn. App. at 414 (emphasis in original). Confronting that question head-on, the Connecticut Appellate Court found that

---

[6] As aptly summarized by the District of Massachusetts in *Helming*:

> In *Amoco*, the plaintiff hired the defendant to construct underground gasoline tanks. More than six years later, the plaintiff discovered that one of the tanks was leaking and brought suit. The six-year statute of limitations had run on any claim for breach of contract, so plaintiff anchored its claim on the indemnification provisions of the parties' contract. The Connecticut Supreme Court concluded that plaintiff's claim for losses was "not a claim for indemnification at all, but, rather, a claim for damages for its own losses arising out of [the defendant's] allegedly negligent and improper installation of the tanks." In other words, plaintiff's lawsuit was, in fact, a claim for breach of contract dressed up as an indemnification action to avoid the statute of limitations problem.

76 F. Supp.3d at 369–70. Thus, at issue in *Amoco Oil* was the proper characterization of the plaintiff's lawsuit as either an indemnification action or breach of contract action. See *Heyman Assocs. No. 5, L.P. v. FelCor TRS Guarantor, L.P.*, 153 Conn. App. 387, 412 (2014). Conversely, Trade Links here did not attempt to initiate *an action for indemnification* against BI-QEM; § 7(b) of the SRA, although labeled as an indemnity provision, is broad enough that it also encapsulates claims for attorneys' fees in the instant, properly initiated breach of contract action.

such language is not "talismanic" nor does it "automatically dictate[] that the provision allows only an action for indemnification limited to the coverage of only third party claims." *Id.* at 415. Rather, the *Heyman* court held that the determination of whether a contractual provision containing terms such as "indemnify" and "hold harmless" applies to first- party actions depends on well-established principles of contract interpretation. *Id.*

Thus, "[i]n reviewing a claim that attorney's fees are authorized by contract, [a Court must] apply the well-established principle that [a] contract must be construed to effectuate the intent of the parties, which is determined from [its] language . . . interpreted in the light of the situation of the parties and the circumstances connected with the transaction." *Id.* (quoting *Total Recycling*, 308 Conn. at 327). "[T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the [writing]." *Id.* (quoting *Conn. Nat'l Bank v. Rehab Associates*, 300 Conn. 314, 319 (2011)). Applying these principles to the provision at issue in that case, the *Heyman* court found that the provision unambiguously applied to first-party actions. *Id.* at 415–17.[7] The court reasoned

---

[7] The provision at issue in *Heyman* provided, in relevant part:

that the language of the provision was broad and "not expressly limited to third

party claims," and that interpreting the provision in a way that restricted it to third-

party claims "would render portions of the indemnification provision superfluous."

*Id.* at 415–16.

In like manner, § 7(b) of the SRA unambiguously applies to claims for

attorneys' fees in the instant action on appeal.  Beginning with the plain language

of the provision, § 7(b) provides:

> <u>Indemnification Against Breach of Agreement</u>. Any party breaching
> its obligations under this Agreement (a "Defaulting Party") shall
> indemnify and hold the other party harmless against all claims,
> losses, damages, costs, and expenses (including reasonable
> attorneys' fees) of any nature or kind arising directly or indirectly
> from such breach.

Just as in *Heyman*, § 7(b) is broadly worded, encompassing "all claims . . . *of any*

*nature or kind*."  See also *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v.*

---

> [Holiday Inn] agrees to and does hereby indemnify and hold [BRS]
> harmless hereunder from all claims, demands, losses, damage,
> expenses and costs including, but not limited to, reasonable
> attorney's fees and expenses arising out of or in connection with
> [Holiday Inn's] failure, from and after delivery of this instrument, to
> observe, perform and discharge on time each and every one of the
> covenants, obligations and liabilities assumed by [Holiday Inn] in
> this instrument relating to, or accruing with respect to the period from
> and after, not before the date hereof.

153 Conn. App. at 410.

*Fine Host Corp.*, 418 F.3d 168, 178–79 (2d Cir. 2005) (finding, under New York law, that "the broad language of the second provision . . . indicates 'unmistakably' that the parties intended for the second provision to apply to 'actions of any kind or nature,' including actions between the parties").  Section 7(b) is also not expressly limited to third-party claims — In fact, it speaks specifically of claims arising from any party's "breach" of the SRA, a term generally employed in the context of first-party contract disputes.  Indeed, it is difficult to think of a party more likely to assert a claim arising from the breach of the contract than a party to the contract itself.  Additionally, given that no other provision in the SRA addresses a first-party's rights or remedies in the event of the other party's breach, it is manifest that the parties intended for § 7(b) to be the operative provision in such circumstances.

Further supporting Trade Links' position is the fact that § 7(a), which immediately precedes section 7(b), refers specifically to third-party actions. Section 7(a), entitled "Indemnification Against Liability for Trademarks and Products," reads as a third-party indemnification provision.  For example, it provides:  "[BI-QEM] shall defend any such claims against [Trade Links]" and "[BI-QEM] . . . shall pay any judgment that may be rendered against [Trade Links] for any such claims."  Taken together, the only reading of § 7 as a whole is that § 7(a) was intended to apply to third-party disputes while section 7(b) was not intended to be so restricted.

Thus, "[g]iven the broad language of [§ 7(b)] and the absence of any indication that it was limited to third party claims," *Heyman*, 153 Conn. App. at 417, § 7(b) can only be read that it unambiguously applies to first-party actions and provides for an award of attorneys' fees and costs to Trade Links in this case for BI-QEM's bad faith breach of the SRA as found by the jury.

BI-QEM's tortured reading of § 11(c) simply cannot be countenanced. Taken to its inevitable conclusion, BI-QEM's interpretation would lead to absurd results which cannot be harmonized with other sections of the SRA contract. "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." *Roden v. AmerisourceBergen Corp*., 186 Cal. App. 4th 620, 651 (2010) (internal quotations omitted).

At trial, the District Court addressed the issue of whether § 11(c) was ambiguous and should therefore be submitted to the jury to determine whether it limited remedies and damages available to Trade Links or was, as submitted by Trade Links, *unambiguous* as a matter of law. *See* TRIAL TR. at 5:17–9:18. The District Court stated that, in determining whether the provision was ambiguous, the court would revisit the extensive summary judgment briefing as to the issue, *id.* at 6:10–14; 8:19–24, and thereafter ruled unequivocally that § 11(c) *unambiguously* did not limit Plaintiff's remedies:

> The Defendants have asserted that Section 11(c) serves as a limitation on Plaintiff's claims and damages in this litigation. I

44

> disagree. The section unambiguously does no such thing. It does not preclude the Plaintiff from seeking damages for a claimed breach of the contract, and indeed, his right to do [so] is clearly set forth in Section 7(b). So the jury will not be asked to interpret Section 11(c) and will not be charged with respect to this argument.

*See* TRIAL TR. at 370:6–13. The District Court's well-reasoned decision on this issue should be affirmed based on the above analysis, and BI-QEM's challenge to deprive Trade Links the right to collect the award of fees and costs entered as an order of the District Court should be rejected.

<u>CONCLUSION</u>

For all of the reasons set forth above and those bases detailed in Trade Links accompanying Motion to Dismiss, *see* APPELLATE DKT. NOS. 21, 23, incorporated herein as referenced, *supra*, Trade Links requests:

(i)    the jury verdict issued in the principal sum of $965,000.00 as thereafter entered on the docket by the District Court be AFFIRMED, or, in the alternative, be deemed final and non-appealable by reason of BI-QEM's failure to file a timely notice of appeal resulting in this Court not having subject matter jurisdiction with regard to BI-QEM's appeal as to that issue, thereby requiring the jury's verdict as entered remain undisturbed;

(ii)    the District Court's denial of BI-QEM's renewed Rule 50 motion for judgment be AFFIRMED, or, in the alternative, be deemed final and non-appealable by reason of BI-QEM's failure to file a timely notice of appeal resulting in this Court not having subject matter jurisdiction with regard to BI-QEM's appeal as to that issue, thereby requiring the District Court's denial of BI-QEM's renewed Rule 50 motion for judgment remain undisturbed;

(iii)    the District Court's award of attorneys' fees and costs in the principal sum of $775,844.29 be AFFIRMED, or, in the alternative, be deemed

final and non-appealable by reason of (i) BI-QEM's numerous documented failures to file its brief in the manner set forth in FRAP 28 and Local Rule 28.1, and (ii) BI-QEM's waiver and/or abandonment of this issue by not challenging, briefing, or objecting to the *amount* of attorneys' fees and costs in the principal sum $775,844.29 fees, as awarded by the District Court;

(iv) that Trade Links be granted leave by this Court to submit an affidavit of fees and costs Trade Links incurred in having to defend this appeal, in accordance with the terms of the Sales Representative Agreement ("SRA") for the reasons set for, *supra*, herein; and

(v) such other relief as this Court deems just and proper at law and in equity, including an award of interest as provided by FED. R. APP. P. 37(a).

Dated:      September 18, 2024
            Tarrytown, NY


                         PLAINTIFF-APPELLEE
                         TRADE LINKS, LLC


                         By: /s/ *Patrick J. McHugh*
                         Patrick J. McHugh (ct14072)
                         PATRICK MCHUGH LAW LLC
                         303 South Broadway, Suite 234
                         Tarrytown, NY 10591
                         Tel: (203) 403-2217
                         patrick@pmchughlaw.com

                           – and –

                         By: /s/ *Keith A. Minoff*
                         Keith A. Minoff
                         Law Offices of Keith A. Minoff, P.C.
                         One Roundhouse Plaza, Suite 304
                         Northampton, MA 01060
                         Tel: (413) 301-0866
                         keith@minofflaw.com

**Federal Rules of Appellate Procedure Form 6. Certificate of Compliance With Type-Volume Limit**

Certificate of Compliance With Type-Volume Limit,
Typeface Requirements, and Type-Style Requirements

1.   This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f): This document contains **11,047 words**; and

2.   This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:  This document has been prepared in a proportionally spaced typeface using ***Microsoft Word for Mac 16.84 in 14 pt. font size Times New Roman type style.***

(s)  Patrick McHugh

Attorney  for  Plaintiff-Appellee  Trade  Links,  LLC

Dated: September 18, 2024

# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

CAPTION:

TRADE LINKS, LLC
                    Plaintiff-Appellee,
                    v.

BI-QEM SA DE CV and BI-QEM, INC.
                    Defendants-Appellants.

**CERTIFICATE OF SERVICE***

Docket Number: __24-418__

I, Patrick McHugh                                    , hereby certify under penalty of perjury that , I

on _September 18, 2024_                  served a copy of Plaintiff-Appellee Trade Links,

LLC's  Brief in Opposition to Appellants' Appeal

by (select all applicable)**

___ Personal Delivery              ___ United States Mail              ___ Federal Express or other
                                                                       Overnight Courier

___ Commercial Carrier              _x__ E-Mail (on consent)

on the following parties:

| Name | Address | City | State | Zip Code |
|------|---------|------|-------|----------|
| James P. Cinque | Cinque & Cinque. P. C. 355 Lexington Ave., 8th Fl. | New York | NY | 10017 |
| James P. Cinque | cinque845@aol.com | City | State | Zip Code |
| Name | Address | City | State | Zip Code |
| Name | Address | City | State | Zip Code |

*A party must serve a copy of each paper on the other parties, or their counsel, to the appeal or proceeding.  The Court will reject papers for filing if a certificate of service is not simultaneously filed.

**If different methods of service have been used on different parties, please complete a separate certificate of service for each party.

_September 18, 2024_
Today's Date

_____
Signature

Certificate of Service Form (Last Revised 12/2015)